ELECTRONICALLY FILED
Pulaski County Circuit Court
Larry Crane, Circuit/County Clerk
2017-Nov-03 16:05:25
60CV-17-6293
C06D02 : 20 Pages

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
DIVISION NO. \_\_\_\_

ANTHONY "TONY" JOSEPH DILLON,
As Special Administrator of the Estate of
Jannell Dillon, deceased,                                             PLAINTIFF

v.                      Case No. 60CV-2017-_____

MAXUS PROPERTIES, INC.; and
LANDINGS ACQUISITION, L.L.C.                              DEFENDANTS

## COMPLAINT
### (WITH DISCOVERY ATTACHED)

Comes now Plaintiff, by and through his attorneys, James, Carter & Priebe, LLP and The Overton Firm, LLC, and for his Complaint against Defendant Maxus Properties, Inc. and Defendant Landings Acquisition, L.L.C., states:

### Nature of the Claims

1.     This action for wrongful death and personal injury arises out of the death of Jannell Dillon, collectively caused by the Defendants' negligence in maintaining of The Landings at Rock Creek Apartments, Apartment 130, 13200 Chenal Parkway, Little Rock, AR ("Unit 130"). Specifically, Defendants' negligence prevented Ms. Janelle Dillon from safely escaping her injury and death.

### The Parties

2.     Plaintiff Anthony "Tony" Joseph Dillon is the brother of Jannell Dillon, and was duly appointed by order of the Probate Court of Pulaski County, Arkansas, dated March 9, 2017 as Special Administrator of the Estate of Jannell Dillon (Case No. 60PR-16-2085).

EXHIBIT "1"

1

3.     Defendant Maxus Properties, Inc. is, on information and belief, a foreign corporation registered to do business in the State of Arkansas that manages, operates, leases and directs that maintenance and upkeep of real property in Arkansas.

4.     Landings Acquisition Group, L.L.C., on information and belief, is a foreign limited liability company registered to do business in Arkansas that owns and maintain real property in the state of Arkansas; and, for all times relevant to this action, was and is the owner of a certain residential apartment complex located in the City of Little Rock, Arkansas, known as The Landings at Rock Creek Apartments.

5.     The principal place of business for the entity known as Landings Acquisitions, L.L.C. is in Little Rock, Arkansas; and, the ownership and operation of The Landings at Rock Creek Apartments is the only business interest of Landings Acquisitions, L.L.C.

6.     Defendant Maxus Properties, Inc. and Defendant Landings Acquisition, L.L.C. are collectively referred to as Defendants in this Complaint.

### The Landings at Rock Creek

7.     The Landings at Rock Creek Apartments (the "Project") is a residential apartment complex consisting of 154 units situated in 9 buildings, where 80 units are on the ground level and 74 units are second-floor units.

8.     The Project, including all of the 154 rental units comprising the Project, participate in a project-based rental assistance program pursuant to the provisions of 42 U.S.C. § 1437f as regulated, under this statutory authority, by and through the Secretary of the United States Department of Housing and Urban Development ("Section 8 Project-Based Rental Assistance Program").

9. As a participant in the Section 8 Project-Based Rental Assistance Program, all, or substantially all, of the rent due and owing on each of the 154 Units comprising the Project is paid by or through the United States Department of Housing and Urban Development to Defendants, at "fair market" rates which are set at (for 2017) at $673 per month, per one-bedroom unit (of which there are 100 in the Project), $814 per month, per two-bedroom unit (of which there are 54 in the Project).

10. For all times relevant to this action the 154 units comprising the Project were, on information and belief, fully occupied.

11. As a consequence of the Project's participation in the Section 8 Project-Based Rental Assistance Program, Defendants were obligated under 42 U.S.C. §1437f, and the regulations promulgated thereunder (the "Federal Statutory Authority") to maintain the Project, and all units comprising the Project, including Unit 130, in strict compliance with the stated requirements of the Federal Statutory Authority (collectively referred to as the "Federal Statutory Duties").

12. As a consequence of the Project's location in the State of Arkansas, Defendants were obligated to maintain the Project, including the structure that includes Unit 130, in strict compliance with the requirements of the Arkansas Fire Prevention Code, duly enacted pursuant to authority vested in the Director of the Department of Arkansas State Police by Section 6 of Act 254 of 1955 (A.C.A. §§ 12-13-105, as amended) under the laws of the State of Arkansas (the "State Statutory Duties").

13. As a consequence of the Project's location in the City of Little Rock, Arkansas, Defendants were obligated to maintain the Project, including the structure that includes Unit 130, in strict compliance with the requirements of the Little Rock City Municipal Housing Code, duly

enacted pursuant to authority granted the City of Little Rock under the laws of the State of Arkansas (the "City Statutory Duties").

14. The Arkansas Supreme Court has long held that the laws which are in force at the time when, and the place where, a contract is made and to be performed, enter into and form part of it. *Adams v. Spillyards*, 187 Ark. 641, 61 S.W.2d 686 (1933). This embraces those laws which affect its validity, construction, discharge, and enforcement. *Id.* Parties are conclusively presumed to have contracted with reference to the existing law. *Ellison v. Tubb*, 295 Ark. 312, 749 S.W.2d 650 (1988).

15. Based upon Arkansas Law, that the law in effect at the time a contract is made and entered into forms a part of the contract and the strict requirements of the City of Little Rock Housing Code, the minimum standards set forth in the City of Little Rock Housing Code became part of the residential lease agreement in this case; and, created implied warranties of habitability in the residential lease agreement.

16. Because Unit 130 was the subject of a lease entered into by the Defendants with the deceased, the Defendants were obligated to maintain Jannell Dillon's apartment (Unit 130) in strict compliance with the terms, express and implied, in the lease (the "Leasehold Obligations").

### The Occurrence and Events Leading to the Occurrence

17. Unit 130 was one of 80 apartments located on the first floor of a 16-unit building forming a part of the Project; and, is one of four apartments that share ingress and egress through a ground-level breezeway that is open on each end.

18. During the nighttime hours of August 18, 2016, an accidental fire ignited; however, the required fire safety device (the "Smoke Detector") failed to engage in Ms. Dillon's Unit (Unit

130); and, the smoke detector failed to engage in the adjoining unit which is where the 911 call originated.

19.     After extensive investigation and inspections, the cause of the fire could not be determined.

20.     Jannell Dillon ultimately made an effort to escape Unit 130, but was unable to do so prior to her death. Her charred remains were found in the apartment by the emergency fire crew, that extinguished the fire, curled in a fetal position facing the door with debris from the collapsed ceiling covering her body.

### Defendants' Statutory Duty to Maintain a Smoke Detector

21.     As part of their City Statutory Duties, State Statutory Duties and Federal Statutory Duties, Defendants had a duty to maintain a smoke detector in Unit 130.

22.     Defendants installed the (Unit 130) Smoke Detector over 13 years ago; and, the Smoke Detector had exceeded its manufacturer designated 10-year maximum useful life by at least 3 years.

23.     The Smoke Detector was not installed or maintained properly as is evident from the fact that it [1] was not wired on a stand-alone independent circuit, and [2] was improperly installed in a shared circuit along with numerous receptacles and outlets located in the kitchen area, in violation of the City Statutory Duties, State Statutory Duties and Federal Statutory Duties.

24.     The wiring of the Smoke Detector is in violation of the Arkansas Fire Prevention Code.

25.     The Smoke Detector was not installed or maintained properly as is evident from the fact that it did not have a battery backup in the event that power was interrupted and was a

hard-wired only device without a battery backup, in violation of the City Statutory Duties, State Statutory Duties and Federal Statutory Duties.

26. The Smoke Detector used is a violation of the Arkansas Fire Prevention Code.

27. The Smoke Detector also was improperly wired to a standard "switch activated" circuit breaker as opposed to being connected to an "always hot" circuit, in further violation of the City Statutory Duties, State Statutory Duties and Federal Statutory Duties.

28. The wiring of the Smoke Detector is in violation of the Arkansas Fire Prevention Code.

29. The Smoke Detector did not operate in Unit 130 or the adjoin unit where the 911 call originated.

## COUNT I
## WRONGFUL DEATH CLAIM – NEGLIGENCE

30. Plaintiff Anthony Dillon in his capacity as Special Administrator of the Estate of Jannell Dillon, deceased, repeats, realleges, and incorporates by reference the allegations of fact set forth in paragraphs 1 through 29, as though set forth in full in this paragraph.

31. By failing to provide a properly installed, maintained and functioning Smoke Detector, in Unit 130, Defendants breached:

    a) their Federal Statutory and Leasehold Duties to maintain a properly installed, maintained and functioning smoke detector in Unit 130; and

    b) their State Statutory Duty to maintain a properly installed, maintained and functioning smoke detector in Unit 130; and

    c) their City Statutory Duty to maintain a properly installed, maintained and functioning smoke detector in Unit 130

all of which duties were specifically provided to provide safety and security to the occupants of Unit 130; and, to protect them from the resulting injury caused from the accidental fire.

32. As a direct and proximate cause of each of the beaches of duty alleged in the foregoing paragraph, Jannell Dillon received fatal injuries and, as a consequence, her estate has sustained the following damages:

    a) Jannell Dillon's conscious pain and suffering;

    b) Jannell Dillon's disfigurement;

    c) mental anguish suffered by Jannell Dillon's siblings;

    d) funeral expenses;

    e) pecuniary injuries suffered by Jannell Dillon's siblings;

    f) loss of society by Jannell Dillon's siblings;

    g) loss of life damages;

the monetary amount of all such damages, including special damages, exceed the jurisdiction minimum for maintaining a personal injury action in this Court.

33. The foregoing injuries and damages were a foreseeable consequence of Defendants' breach of each of its afore described duties to provide fire safety and security to the occupants of Unit 130; and, to protect them from a possible injury caused by fire.

34. Plaintiff Anthony Dillon claims punitive damages against Defendants in an amount sufficient to deter Defendants from similar conduct in the future.

35. Plaintiff Anthony Dillon demands a trial by jury.

36. Plaintiff Anthony Dillon reserves the right to amend this Complaint.

## COUNT II
## DILLON'S WRONGFUL DEATH CLAIM – PRODUCTS LIABILITY

37. Plaintiff Anthony Dillon, in his capacity as Special Administrator of the Estate of Jannell Dillon, deceased, repeats, realleges, and incorporates by reference the allegations of fact set forth in paragraphs 1 through 36, as though set forth in full in this paragraph.

38. By failing to provide a properly functioning Smoke Detector in Unit 130, the Defendants, as the supplier/lessor of Unit 130, a product, supplied a product which was in a defective condition which rendered Unit 130 unreasonably dangerous, all in violation of ACA §16-116-102

39. As a direct and proximate cause of Defendants supplying a product in such defective condition, which rendered the product unreasonably dangerous, Jannell Dillon received fatal injuries and, as a consequence, her estate has sustained the following damages:

    a) Jannell Dillon's conscious pain and suffering;

    b) Jannell Dillon's disfigurement;

    c) mental anguish suffered by Jannell Dillon and her siblings;

    d) funeral expenses;

    e) pecuniary injuries suffered by Jannell Dillon's siblings;

    f) loss of society by Jannell Dillon's siblings;

    g) loss of life damages;

the monetary amount of all such damages, including special damages, exceed the jurisdiction minimum for maintaining a personal injury action in this Court.

40. The afore described injuries and damages were a foreseeable consequence of Defendants supplying Unit 130 in a defective condition, which defects rendered it unreasonably dangerous.

41. Plaintiff Anthony "Tony" Joseph Dillon claims punitive damages against Defendants in an amount sufficient to deter Defendants from similar conduct in the future.

42. Plaintiff Anthony "Tony" Joseph Dillon demands a trial by jury.

43. Plaintiff Anthony "Tony" Joseph Dillon reserves the right to amend this Complaint.

## COUNT III
## DILLON'S WRONGFUL DEATH CLAIM – BREACH OF LEASE AGREEMENT IMPLIED WARRANTY OF HABITABILITY

44. Plaintiff Anthony "Tony" Dillon, in his capacity as Special Administrator of the Estate of Jannell Dillon, deceased, repeats, realleges, and incorporates by reference the allegations of fact set forth in paragraphs 1 through 43, as though set forth in full in this paragraph.

45. By failing to provide a properly installed, maintained and functioning Smoke Detector in Unit 130, Defendants breached:

   a) their Federal Statutory and Leasehold Duties to maintain a properly installed, maintained and functioning smoke detector in Unit 130; and

   b) their State Statutory Duty to maintain a properly installed, maintained and functioning smoke detector in Unit 130; and

   c) their City Statutory Duty to maintain a properly installed, maintained and functioning smoke detector in Unit 130

all of which duties were specifically provided to provide safety and security to the occupants of Unit 130; and, to protect them from the resulting injury caused from the accidental fire.

46. The failure of Defendants to properly install and install the smoke detector in Unit 130, constitutes a breach of the lease agreement's implied warranty of habitability. A copy of Jannell Dillon's lease agreement is unavailable; and, Plaintiff believes that the original copy was

9

destroyed in the August 18, 2016 fire; therefore, it is unavailable to be annexed to this Complaint as an exhibit.

47. As a direct and proximate cause of the breach of the implied warranty of habitability that arise with the lease agreement, Jannell Dillon received fatal injuries.

48. As a direct and proximate cause of each of the breaches of the implied warranty of habitability alleged in the foregoing paragraphs, Jannell Dillon received fatal injuries and, as a consequence, her estate has sustained the following damages:

    h)      Jannell Dillon's conscious pain and suffering;

    i)      Jannell Dillon's disfigurement;

    j)      mental anguish suffered by Jannell Dillon's siblings;

    k)      funeral expenses;

    l)      pecuniary injuries suffered by Jannell Dillon's siblings;

    m)      loss of society by Jannell Dillon's siblings;

    n)      loss of life damages;

the monetary amount of all such damages, including special damages, exceed the jurisdiction minimum for maintaining a personal injury action in this Court.

49. The foregoing injuries and damages were a foreseeable consequence of Defendants' breach of each of its afore described implied warranty of habitability to provide fire safety and security to the occupants of Unit 130 and to protect them from a possible injury caused by fire.

50. Defendants have been provided written notice of their breach.

51. Plaintiff Anthony Dillon claims punitive damages against Defendants in an amount sufficient to deter Defendants from similar conduct in the future.

52. Plaintiff is entitled to statutory attorneys' fees as a result of the breach of lease.

53. Plaintiff Anthony Dillon demands a trial by jury.

54. Plaintiff Anthony Dillon reserves the right to amend this Complaint.

WHEREFORE, Plaintiff Anthony "Tony" Joseph Dillon prays for judgment against Defendants in an amount to be determined at trial; together with punitive damages against Defendants in an appropriate amount; together with his costs herein and such further relief as to the Court seems just and proper.

ATTORNEYS FOR PLAINTIFF,

_____
Paul J. James, Arkansas Bar #83091
JAMES, CARTER & PRIEBE, LLP
500 Broadway, Suite 400
PO Box 907
Little Rock, Arkansas 72203-0907
Tel 501.372.1414; Fax 501.372.1659
pjj@jamescarterlaw.com

and

J. Don Overton, Esq. AR Bar #07029
THE OVERTON FIRM, LLC
PO Box 241031
Little Rock, AR 72223
Tel: (501) 563-0186
Fax: (501) 396-6987
Don@TheOvertonFirm.com

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
DIVISION NO. ____

ANTHONY "TONY" JOSEPH DILLON,
As Special Administrator of the Estate of
Jannell Dillon, deceased,                                            PLAINTIFF

v.                          Case No. 60CV-2017-_____

MAXUS PROPERTIES, INC. and
LANDINGS ACQUISITION, L.L.C.;                           DEFENDANTS

### PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION PROPOUNDED UPON DEFENDANTS

Pursuant to the Arkansas Rules of Civil Procedure, Plaintiff herein serves the following Interrogatories and Requests for Production to be answered separately and fully in writing, under oath, including opinions where fairly called for, in relation to fact or application of law to fact by each Defendant.

Documents shall be produced in accordance with the Arkansas Rules of Civil Procedure. Except as otherwise expressly indicated, the following definitions shall apply throughout these interrogatories and requests:

I.      "Document" means any material subject to discovery under the Arkansas Rules of Civil Procedure, including, but not limited to, the original and non-identical copies of correspondence, memoranda, agreements, notes, handwritten notes and scratch pads or sheets, accounting entries, purchasing order, invoices, statement of account, records, computer printouts, calculations, tape recordings, and all of the writings, recordation of communications, recordings, or data compilations, in whatever form, including drafts thereof, machine readable information, and any material underlying supporting or used in the preparation of any document, now or formerly within the actual or constructive possession, custody, or control of Defendant, or of which

the Defendant is aware.

II.  "Identify" when used in reference to a natural person shall mean to state: (1) his or her full name and present or last known residence address; (2) residence telephone number; (3) present or last known business affiliation, position, and address; (4) business telephone number; and (5) a complete description of his or her business affiliation(s) and position(s) during times relevant to the information sought by the interrogatory or requests. To the extent that any of the above information is not available, state all other available means of identifying such natural person.

III.  "Identify" when used in reference to a person other than an individual, shall mean to state: (1) its full name; (2) nature or type of organization or association; (3) state under which same was organized; (4) address of principal place of business, and (5) principal line of business. To the extent that any of the above information is not available, state any other available means of identifying such person other than that individual.

IV.  "Identify" when used in reference to a document shall mean to state its: (1) date; (2) author; (3) type of document (e.g., letter, memoranda, receipt, invoice, schedule, report, telegram, chart, photograph, sound reproduction, or the like); and (4) its present location and the name and address of each present custodian. If any such document was, but is no longer in Plaintiff's possession, or subject to its control, or is no longer in existence, state whether it: (a) is missing or lost; (b) has been destroyed; (c) has been transmitted or transferred to others; or (d) has been otherwise disposed of, and in each instance, explain the circumstances surrounding any authorization for such disposition and state the date or approximate date thereof. To the extent that any of the above information is not available, state any other available means of identifying such document.

V. "Person" or "Persons" as used herein shall be deemed to include natural persons, firms, partnerships, association, joint ventures and corporations.

VI. "And", as well as "or", should be construed disjunctively or conjunctively as necessary in order to bring within the scope of any interrogatory or request all responses which might otherwise be construed to be outside its scope.

VII. "You" or "Defendant" or "Defendants" means the Defendants in this case or any subsidiary and or affiliate thereof, and/or any one of them individually, and their employees or agents.

VIII. "The Landings" as used herein is The Landings at Rock Creek apartment complex located at 13200 Chenal Parkway, Little Rock, Arkansas 72211.

**INTERROGATORY NO. 1:** Please identify the persons answering each of these interrogatories.

**INTERROGATORY NO. 2:** Please set forth the dates upon which you answered these interrogatories.

**INTERROGATORY NO. 3:** Please identify each person, other than counsel, who was consulted, or provided or was asked to provide, information in connection with these interrogatories and describe the information that was sought from or provided by each such person and identify which particular interrogatory or interrogatories for which each such person provided information.

**INTERROGATORY NO. 4:** Please identify all of the employees of the Defendants that were employed as of August 16, 2016; and, please identify if they are still employed at The Landings; and, if they are not currently employed please provide their separation date and reason for separation from employment at The Landings.

**INTERROGATORY NO. 5:** Please identify all of the resident tenants of the adjoining apartments that shared the same building as Unit 130, as of August 16, 2016; and, please identify if they are still tenants at The Landings; and, if they are not currently tenants please provide the date and reason for their separation from their lease agreement with The Landings.

**INTERROGATORY NO. 6:** During the period commencing five years prior to the filing of this action, have Defendants ever had a direct or indirect ownership interest in any of the real property or improvements thereon known as The Landings? If so, state (a) the date on which such interest was acquired by Defendants, (b) the nature of the interest acquired (i.e. fee simple, stock in company which owns the real property, etc.), (c) whether either Defendant have conveyed such interest to another party and, if so, to whom on and on what date or dates.

**INTERROGATORY NO. 7:** Do you contend that the Plaintiff negligently caused or was contributorily negligent in causing the damages claimed herein? If so, state particularly your contentions in that regard.

**INTERROGATORY NO. 8:** Identify the persons whom Defendants have knowledge about (a) the maintenance provided at The Landings at the time of the occurrence, (b) the maintenance of Unit 130 of The Landings and the building in which it was situated, and (c) Defendants' compliance with (i) regulations promulgated by or agreements with the United States Department of Housing and Urban Development or the Little Rock Housing Authority, (ii) the laws of the State of Arkansas, and (iii) the ordinances of the City of Little Rock, Arkansas.

**REQUEST FOR PRODUCTION NO. 1:** Please produce all documents which constitute or refer to any agreement relating to the providing of maintenance for The Landings for the period of 2010 through 2017 from any independent contractor or outside vendor who was not an employee or either Defendant.

**REQUEST FOR PRODUCTION NO. 2:** Please produce copies of all maintenance logs for The Landings for the period of 2010 through 2017, including all annual inspections and any and all logs or invoices or statements where any replacement equipment or safety devices were replaced or installed at The Landings.

**REQUEST FOR PRODUCTION NO. 3:** Please produce any documents which constitute or refer to any agreement between either Defendant and the Little Rock Housing Authority or the United States Department of Housing and Urban Development concerning the maintenance and operation of The Landings for the period of 2010 through 2017.

**INTERROGATORY NO. 9:** Have you, your agents or employees or attorneys or anyone on your behalf ever obtained a statement from any of the occupants of The Landings concerning the occurrences? If so, state exactly who made the statements, what Unit they reside in at The Landings and what was said in such statement or statements.

**INTERROGATORY NO. 10:** Please state to whom you have made any written or recorded statements concerning the fire other than to your attorney or to the investigating officer.

**REQUEST FOR PRODUCTION NO. 4:** Please produce copies of the recorded statements identified in the preceding Interrogatory.

**INTERROGATORY NO. 11:** Please state whether you or anyone acting for you has secured or obtained or has any knowledge of any statement, written or recorded, by any person who claims to have any knowledge concerning the fire referred to in Plaintiffs' complaint. If your answer is yes, identify each person and the custodian of the statement.

**INTERROGATORY NO. 12:** Do you, your attorneys, agents or representatives have any information concerning the existence of possible witnesses to the fire other than as contained on the police report? If so, identify each witness and please state with specificity what knowledge that

they have.

**INTERROGATORY NO. 13:** Please identify all witnesses you intend to call at the trial of this matter.

**INTERROGATORY NO. 14:** Please describe all exhibits you intend to introduce at trial of this matter.

**INTERROGATORY NO. 15:** State what photographs have been taken or are in the possession of you, or anyone acting on your behalf, of the fire scene.

**REQUEST FOR PRODUCTION NO. 5:** Please produce copies of photographs identified in the preceding Interrogatory.

**INTERROGATORY NO. 16:** If you or any of your representatives have employed an expert, other than an attorney, to act on your behalf with respect to any matter resulting from the fire in question, identify each such expert and field of specialization specifying whether he or she:

a) Is expected to testify at trial on your behalf;

b) Has been specially retained or employed in anticipation of litigation but is not expected to so testify; and

c) Is a salaried employee in your regular employ or that of any of your representatives.

**INTERROGATORY NO. 17:** With respect to each expert who is in such regular employ or is expected to testify at trial on your behalf, state:

a) The expert's name;

b) The subject matter on which the expert is expected to testify;

c) The substance of the facts and opinions to which the expert is expected to testify; and

d) A summary of the grounds for each opinion held by the expert.

**INTERROGATORY NO. 18:** Do you claim that the Plaintiff acted or omitted to act in a

manner which contributed to the fire or damages in question? If so, state:

    a) What the Plaintiff did that you claim she should not have done; and

    b) What the Plaintiff did to which you claim she should have done.

**INTERROGATORY NO. 19:** Do you have any form of liability insurance providing potential indemnification against any judgment the Plaintiff might obtain? If so, state the name of each and every liability carrier providing insurance and the coverage limits.

**REQUEST FOR PRODUCTION NO. 6:** Please produce all documents referred to or relied upon in answering the above interrogatories.

**REQUEST FOR PRODUCTION NO. 7:** Please produce all documents which constitute or refer to the lease of Unit 130 of The Landings that was in force as of the time of the occurrence out of which this action arises, including, without any limitation, any addenda thereto or correspondence or memoranda referring thereto.

**REQUEST FOR PRODUCTION NO. 8:** Please produce any documents which refer or relate to any inspection of the condition of The Landings for the period of 2010 through 2017.

**REQUEST FOR PRODUCTION NO. 9:** Please produce any documents which refers or relates to the occurrence out of which this action arises.

**REQUEST FOR PRODUCTION NO. 10:** Please produce any documents which refer or relate to the providing, by Defendants, of locks on any exterior doors to the buildings comprising The Landings.

**REQUEST FOR PRODUCTION NO. 11:** Please produce any documents which refer or relate to the providing, by Defendants, of smoke alarms in any of the buildings comprising The Landings.

**REQUEST FOR PRODUCTION NO. 12:** Please produce any documents which refer

or relate to emergency mean of egress from any of the buildings comprising The Landings.

**REQUEST FOR PRODUCTION NO. 13:** Please produce any documents which refer or relate to fires occurring at or on any building comprising The Landings during the period of 2010 through 2017.

**REQUEST FOR PRODUCTION NO. 14:** Please produce any photographs of the condition of Unit 130, or any part thereof, or any portion of the building in which it is situated, at any time during the period of 2010 through 2017.

**REQUEST FOR PRODUCTION NO. 15:** Please attach a copy of Jannell Dillon's Lease Agreement.

**REQUEST FOR PRODUCTION NO. 16:** Please attach a copy of the invoices for any smoke detectors purchased for The Landings, at any time during the period of 2010 through 2017.

**REQUEST FOR PRODUCTION NO. 17:** Please attach a copy of any invoices paid for any smoke detectors installed at The Landings, at any time during the period of 2010 through 2017.

**REQUEST FOR PRODUCTION NO. 18:** Please attach all maintenance contracts for The Landings between 2010 and 2017.

**INTERROGATORY NO. 20:** Will you supplement your answers to these interrogatories upon receipt of any information which would alter, amend or supplement your previous answers?

ATTORNEYS FOR PLAINTIFF,

_____
Paul J. James, Arkansas Bar #83091
JAMES, CARTER & PRIEBE, LLP
500 Broadway, Suite 400
PO Box 907
Little Rock, Arkansas 72203-0907
Tel 501.372.1414; Fax 501.372.1659
pjj@jamescarterlaw.com

and

J. Don Overton, Esq. AR Bar #07029
THE OVERTON FIRM, LLC
PO Box 241031
Little Rock, AR 72223
Tel: (501) 563-0186
Fax: (501) 396-6987
Don@TheOvertonFirm.com