# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

ANTHONY "TONY" JOSEPH DILLON, as
Special Administrator of the Estate of
JANNELL DILLON, Deceased     PLAINTIFF

v.     NO. 4:17CV00813 JLH

MAXUS PROPERTIES, INC., and
LANDINGS ACQUISITION, LLC     DEFENDANTS

## OPINION AND ORDER

This is an action arising from the death of JANNELL Dillon. On the morning of August 18, 2016, emergency personnel responded to 911 reports of a fire at Dillon's apartment in Little Rock. After entering the apartment to extinguish the fire, the responders found her dead on the floor of the hallway outside the two bedrooms. She had died from smoke and soot inhalation. Her estate sued the companies that owned and managed the apartment complex, alleging that the defendants breached duties owed to Dillon because the smoke detector within her apartment failed to sound an alarm during the fire. If it had sounded, the estate alleged, it would have timely alerted Dillon to the danger and she would have escaped.

Several motions are pending. The defendants have moved for partial summary judgment on Dillon's product liability and breach of an implied warranty of habitability claims. Dillon's estate has not responded to those motions, but has instead moved to withdraw those two claims. Because the partial summary judgment motions are unopposed, they are granted. The product liability and breach of an implied warranty of habitability claims are dismissed with prejudice. The plaintiff's motion to withdraw these two claims is denied as moot.

The plaintiff has moved to exclude two of the defendants' experts. The defendants have moved for summary judgment on the issue of causation, and have also moved for partial summary

judgment on the plaintiff's punitive damages claim. For the reasons that will be explained, the plaintiff's motion to exclude the defendants' experts is granted in part and denied in part, the defendants' motion for summary judgment is denied, and the defendant's motion for partial summary judgment on the issue of punitive damages is denied.

*Motion to Exclude Expert Testimony*

The use of expert evidence in federal court is governed by Federal Rule of Evidence 702, as interpreted by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The Court acts as a gatekeeper to ensure that a proffered expert is qualified by his knowledge, skill, experience, training, or education before that person may testify as an expert. *Daubert*, 509 U.S. at 589, 113 S. Ct. at 2795; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S. Ct. 1167, 1171, 143 L. Ed. 2d 238 (1999).

"Rule 702 favors admissibility if the testimony will assist the trier of fact, and doubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998) (citation and quotation omitted). "Only if an expert's opinion is 'so fundamentally unsupported that it can offer no assistance to the jury' must such testimony be excluded." *Hose v. Chicago Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995) (quoting *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988)). "'[E]ven if

the judge believes there are better grounds for some alternative conclusion, and that there are some flaws in the scientist's methods, if there are good grounds for the expert's conclusion it should be admitted.'" *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001) (quoting *Heller v. Shaw Indus.*, 167 F.3d 146, 152-53 (3d Cir. 1999)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596, 113 S. Ct. at 2798.

*Expert Testimony of Ryan Baker*

Here, the defense has designated Ryan Baker as an expert witness on the cause and origin of the fire that caused Dillon's death. Baker opines that (1) the fire originated in the apartment's west bedroom; (2) the material that first ignited was Dillon's bed linens; (3) the most probable ignition source was heat produced from an unattended or improperly discarded smoldering cigarette; (4) the cigarette ignited the bed linens or blankets and Dillon discarded the cigarette; and (5) an intentional act could not be eliminated. Document #32-1 at 7. The estate challenges Baker's testimony, arguing that "Baker failed to adhere to basic and central requirements of [the National Fire Protection Association standards] in investigating" the fire. Document #34 at 4.

"An expert qualified as a fire investigator may testify as to his opinion on the fire's origin and possible causes based on evidence." *Booth v. Kelley*, 882 F.3d 759, 762 (8th Cir. 2018). A fire origin and cause expert may "testify as to the point of origin and . . . explain that he inferred" what caused the fire through process of elimination. *Hickerson v. Pride Mobility Prods. Corp.*, 470 F.3d 1252, 1257-58 (8th Cir. 2006). But an investigator may not testify as to who caused a fire. *Booth*, 882 F.3d at 762 (citing *Brandt Distrib. Co. v. Fed. Ins. Co.*, 247 F.3d 822, 826 (8th Cir. 2001)). The

3

Eighth Circuit has approved of NFPA 921 as a valid method for determining the cause of a fire, so long as it is followed reliably. *See Manuel v. MDOW Ins. Co.*, 792 F.3d 838, 845 (8th Cir. 2015).

Baker concluded that the fire was caused by a cigarette based on multiple scene inspections, a two-day laboratory examination of evidence from the scene, interviews with two witnesses, and an affidavit by Dillon's neighbor. *See* Document #32-1 at 3-6. Baker himself did not conduct each of the inspections and examinations, but under NFPA 921 a fire investigator may rely on the findings of others. NFPA 921 explains that a proper origin and cause investigation consists of "an examination of the scene and by a combination of other data collection methods, such as the review of previously conducted investigations of the incident, the interviewing of witnesses or other knowledgeable persons, and the results of scientific testing. Document #32-10 at 7-8. NFPA 921 thus expressly allows an investigator to rely on facts or data gathered by others. The estate complains that Baker did not analyze the bedding itself, but it has pointed to nothing in NFPA 921 that requires such specific testing. Many items of evidence from fire scene were tested. Document #32-1 at 14-17, 305-306.

Most of Baker's testimony is admissible. *See Hickerson*, 470 F.3d at 1257. The purported flaws in Baker's testimony go to its weight, not admissibility. The estate has pointed out gaps in Baker's investigation and the basis for his conclusion. For example, Baker does not know what materials the blankets were made of. Document #32-2 at 68-70. The estate will be able to expose these weaknesses in Baker's report as well as argue inferences the jury should make from the report's omissions. *See Daubert*, 509 U.S. at 596, 113 S. Ct. at 2798.

Baker may not, however, testify that Dillon herself discarded a smoldering cigarette for two reasons. First, this testimony is not scientific, technical, or other specialized knowledge purported

4

to be within Baker's expertise. See Fed. R. Evid. 702. Second, the Eighth Circuit has indicated specifically "that a fire investigator should not 'usurp the province of the jury' by testifying as to who caused the fire." *Booth*, 882 F.3d at 762. Baker may not testify that "the tenant, Ms. Dillon" improperly discarded any cigarette that caused the fire, as his report indicates.

*Expert Testimony of Tony Bishop*

The defense has also designated Tony Bishop as a forensic engineering expert. The estate asks the Court to exclude parts of his opinions. The estate moves to exclude Bishop's opinion that "[t]he electrical facilities and utilization devices in the structure did not serve as an ignition source for the fire." Document #32-4 at 2. The estate also moves to exclude any testimony that the smoke alarm sounded at the time of the fire.

As with Baker's testimony, the estate attacks Bishop's methodology as noncompliant with NFPA 921. Specifically, the estate challenges Bishop's failure to test his hypothesis that a power cord in Dillon's bedroom did not start the fire and his hypothesis that the smoke alarm did not sound during the fire. Bishop's report reveals that he followed NFPA 921 by reviewing and relying on previously conducted investigations of the incident, interviewing of witnesses or other knowledgeable persons, and scientific testing. Document #32-10 at 7-8. Much of the estate's attack rests on a withering critique of Bishop by a rebuttal expert, whose own previous scholarship formed the basis of some of Bishop's testimony. But the jury will be able to hear from this rebuttal expert and will be able to determine from all the evidence what weight to give Bishop's testimony. Bishop's testimony is admissible.

*Motion for Summary Judgment*

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

The defendants move for summary judgment on the issue of causation. They argue that even assuming the smoke alarm failed to sound during the fire, the estate lacks evidence that this failure caused Dillon's death. The defendants point to Dillon's many extensive health problems as well as the postmortem toxicology report showing nicotine, alcohol, and various medications in her system at the time of her death. According to the defendants, the jury would have to speculate to find that if the smoke alarm had in fact sounded, Dillon would not have been able to escape the fire anyway due to her poor physical state. They say the "debilitating medical conditions of the decedent in combination with the drugs and alcohol in her system make it highly speculative to say with any certainty that she would have survived the danger presented by the fire, sounding smoke alarm sounding (sic) or not." Document #22-1 at 14.

Under Arkansas law governing this case, a plaintiff must prove proximate cause, "a cause which, in a natural and continuous sequence, produces damage and without which the damage would not have occurred." Ark. Model Jury Instr. 501. Causation is normally a fact question for the jury. *Stecker v. First Commercial Trust*, 331 Ark. 452, 458, 962 S.W.2d 792, 796 (1998). It only becomes

a question of law if reasonable minds could not differ. *Craig v. Traylor*, 323 Ark. 363, 370, 915 S.W.2d 257, 260 (1996) (overruled on other grounds). Circumstantial evidence "is sufficient to show proximate cause if the facts proved are of such a nature and are so connected and related to each other that the conclusion may be fairly inferred." *Id.* Nevertheless, "[j]uries are not permitted to guess or to speculate as to the proximate cause of an alleged injury." *Mangrum v. Pigue*, 359 Ark. 373, 386, 198 S.W.3d 496, 503 (2004).

Taking the facts in the light most favorable to the estate, summary judgment must be denied because reasonable minds could differ on the question of causation.

It is undisputed that Dillon had an extensive medical history, including severe chronic obstructive pulmonary disease with caused her to be dependent on an oxygen tank. At the time of her death she had alcohol and several prescribed medications in her system. Dillon was also a smoker. Contrary to the defendants' argument, however, the estate has produced evidence that despite Dillon's poor health, many medications, and blood alcohol concentration above the legal driving limit, she would have been able to respond to a functioning smoke alarm. A forensic pathologist, Dr. Kris Sperry, testified that Dillon had "the mental capacity to hear and react to a smoke detector." Document #38-5. He testified that the alcohol in Dillon's body at the time of the fire "did not impair her ability to recognize the danger that the fire presented." Document #38-4 at 4. And there was no evidence the oxycodone in Dillon's blood and fentanyl patch on her body "either caused her death, or contributed to her death in any way." Document #38-4 at 5. Dr. Sperry's expertise and methodology have not been challenged.

The defendants argue Dillon "had so many other issues that an argument she could have survived the fire with a sounding smoke alarm is grounded in nothing more than speculation and

7

conjecture." Document #22-1 at 9. They say that the level of drugs and alcohol in Dillon's system when she died, combined with her poor health, "are too significant for Plaintiff to be able to point to any other cause without engaging in speculation and conjecture." Document #47 at 5-6. Perhaps in a similar case a decedent's poor health would render the plaintiff's causation evidence too thin. But Dr. Sperry's unchallenged expert testimony shows that this is not such a case.

At this stage, a jury could reasonably infer that Dillon had detached herself from the oxygen on which she depended: her oxygen tank was in her bedroom, rather than with her when she was found in the hall. Document #38-5 at 15-16. A jury could find that the smoke in Dillon's bedroom alerted her to the fire. *See id.* A jury could also find that she was physically and mentally able to react appropriately to danger, based on the expert evidence above, and by inferring that Dillon responded to the fire – albeit too late – by exiting the bedroom. *Id.* at 16. It is reasonable to infer from these facts that had a smoke alarm sounded, Dillon could have escaped earlier. A jury could fairly infer, therefore, that the malfunctioning smoke alarm caused Dillon's death based on all the circumstantial evidence, without resorting to speculation. *Stecker*, 331 Ark. at 458, 962 S.W.2d at 796.[1]

*Motion for Partial Summary Judgment on the Issue of Punitive Damages*

Finally, the defense moves for partial summary judgment on the issue of punitive damages. Under Arkansas law,

---

[1] The defendants point out that the plaintiff's fire origin and cause expert, Rick Jones, only testified that "*perhaps* if a[n] alarm would have been working Ms. Dillon could have exited the building." Document #22-1 at 7. But Mr. Jones never purported to testify to Dillon's medical or physical capabilities at the time of the fire. Dr. Sperry, on the other hand, did so testify as explained above.

> In order to recover punitive damages from a defendant, a plaintiff has the burden of proving that the defendant is liable for compensatory damages and that either or both of the following aggravating factors were present and related to the injury for which compensatory damages were awarded:
>
> (1) The defendant knew or ought to have known, in light of the surrounding circumstances, that his or her conduct would naturally and probably result in injury or damage and that he or she continued the conduct with malice or in reckless disregard of the consequences, from which malice may be inferred [.]

Ark. Code Ann. § 16-55-206; *see also Roeder v. United States*, 2014 Ark. 156 at *8-9, 432 S.W.3d 627, 633 (explaining that the conduct from which malice may be inferred includes reckless disregard of the consequences). Negligence, even gross negligence, will not support an award of punitive damages in Arkansas. *In re: Aircraft Accident at Little Rock*, 351 F.3d 874, 877 (8th Cir. 2003); *Edwards v. Stills*, 335 Ark. 470, 484, 984 S.W.2d 366, 373 (1998).

Here, the defendants had in place a policy in which it recognized the importance of functional smoke detectors to the safety of the apartment residents. The policy also requires that smoke detectors be changed out every ten years. Here, taking every inference in favor of the estate, Dillon's smoke detector was not functional, and it was twelve to eighteen years old. Both of these violated the apartment complex's own policy. A maintenance man has testified that he checked all the smoke detectors several months before the August 2016 fire, but the defendants have no records documenting any inspections of smoke alarms – also in violation of apartment policy. The defendants never trained employees on the installation, maintenance, and testing of smoke alarms prior to Dillon's death, and estate has put forth evidence that the method which the maintenance man used – pressing a button to sound the alarm – is not a proper method to test smoke alarms. Finally, almost two years before Dillon's death, the defendants purchased more than a hundred smoke alarms to replace the smoke detectors at Dillon's apartment complex, but they were not in fact replaced.

Despite the defendants' own policies, they did not adequately inspect or replace the smoke alarms, even though they knew the smoke alarms were expired, and even though they knew that functioning smoke alarms are critical to resident safety. A reasonable jury could find from this evidence that the defendants knew or ought to have known that their conduct would naturally and probably result in injury or damage, and that they continued the conduct in reckless disregard of the consequences, from which malice could be inferred. Summary judgment on the issue of punitive damages must therefore be denied.

For the reasons explained, the defendants' motions for partial summary judgment on the product liability and breach of implied warranty of habitability claims are GRANTED. Documents #23 and #26. The plaintiff's motion to withdraw two claims is DENIED AS MOOT. Document #41. The plaintiff's motion to exclude testimony is GRANTED IN PART AND DENIED IN PART. Document #32. The defendants' motion for summary judgment is DENIED. Document #22. The defendants' motion for partial summary judgment on the issue of punitive damages is DENIED. Document #29.

IT IS SO ORDERED this 9th day of April, 2019.

                                             */s/ J. Leon Holmes*
                                             J. LEON HOLMES
                                             UNITED STATES DISTRICT JUDGE